**PARTISAN DEFENSE COMMITTEE, Plaintiff,**

v.

**George RYAN, et al., Defendants.**

No. 94–3009.

United States District Court, C.D. Illinois, Springfield Division.

Jan. 26, 1994.

Nunc Pro Tunc Jan. 14, 1994.

ruptcy appeal might have in the present case.

Jonathan B. Piper, Chicago, IL, for plaintiff.

Terrence J. Corrigan, Charles R. Schmadeke, Asst. Attys. Gen., Springfield, IL, for defendants.

## *OPINION*

RICHARD MILLS, District Judge:

Emergency motion for preliminary injunction.

### I. *Background*

On the 1994 weekend of the Martin Luther King, Jr., holiday, a total of nine demonstration permits were issued for the Illinois State Capitol grounds—four on Saturday, three on Sunday and two on Monday. Plaintiff received a permit from Illinois Secretary of State George Ryan to conduct a demonstration on the State Capitol grounds in Springfield on Sunday, January 16, 1994. Specifically, the permit allows Plaintiff to demonstrate on the north steps of the Capitol Building and on a circular drive which passes through the area adjacent to the north steps.

The demonstration is to be in direct response to a scheduled demonstration by the Ku Klux Klan which will also take place on the State Capitol grounds, on the east steps of the Capitol Building.

As a part of Plaintiff's demonstration, they wish to erect a speaker's platform and sound system. Plaintiff wishes to erect the platform and sound system on the east end of the circular drive, next to the Illinois Workers Memorial. This location will place Plaintiff within line of sight of the KKK rally.

The Secretary of State will not allow Plaintiff to erect its platform and sound system on the circular drive. Such a placement of the platform and sound system, according to the Secretary of State's office, will unreasonably interfere with the movement of vehicular traffic including emergency vehicles.

Nor will the Secretary of State allow Plaintiff to erect the platform and sound system on the lawn of the Capitol complex next to the Illinois Workers Memorial. The Secretary fears that placing the platform and sound system on the Capitol complex lawn could damage a sophisticated underground sprinkler system which has recently been installed.

Finally, the Secretary will not allow Plaintiff to erect the platform and sound system in direct line of sight of the KKK rally because of Plaintiff's stated desire to "drown out" the KKK rally by using a highly powerful sound system. The Secretary fears that attempts to drown out the KKK rally could create security problems.

The Secretary has no objection to the use of a speaker's platform and sound system as long as the platform and sound system are erected on the north steps area of the Capitol Building. This location will keep the platform and sound system off of the circular drive and Capitol complex lawn. This placement will also refrain Plaintiff from using its sound system to directly interfere with the KKK's rally.

Plaintiff argues that the Secretary's denial of its request to place the platform and sound system on the east end of the circular drive constitutes an unreasonable restriction on the exercise of its constitutional rights. According to Plaintiff, the Secretary's denial is based on the content of its speech. Furthermore, Plaintiff argues, the Secretary's restrictions on the place and manner of its rally burdens substantially more speech than is necessary to further the government's legitimate interests.

This case was originally filed in the United States District Court, Northern District of Illinois, on January 13, 1994. Defendants filed a motion to dismiss for improper venue or, in the alternative, for change of venue. A hearing was held on January 14 before the Honorable Ann Claire Williams. Judge Williams heard arguments on the venue issue.

Later that day, Judge Williams issued a memorandum opinion and order granting Defendants' motion to dismiss, transferring the case to the Central District of Illinois. The attorneys for both parties flew from Chicago to Springfield and an emergency hearing was held on the matter that afternoon.

## II. Legal Standard

"The government may permissibly place reasonable restrictions on the time, place or manner of speech as long as any regulations are content neutral, narrowly tailored to promote a significant governmental interest, and the regulations leave open adequate alternative modes of communication." *Lubavitch Chabad House, Inc. v. City of Chicago*, 917 F.2d 341, 346 (7th Cir.1990) (citing *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746, 2753–54, 105 L.Ed.2d 661 (1989)). "We have refrained from imposing a least-restrictive-means requirement—even where core political speech is at issue—in assessing the validity of so-called time, place, and manner restrictions." *Bd. of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 477–78, 109 S.Ct. 3028, 3033, 106 L.Ed.2d 388 (1989). "We uphold such restrictions so long as they are 'narrowly tailored' to serve a significant governmental interest, a standard that we have not interpreted to require elimination of all less restrictive alternatives. And we have been loath to second-guess the Government's judgment to that effect." *Id.* at 478, 109 S.Ct. at 3033 (citations omitted).

## III. Analysis

In the instant case, the Illinois government, through the Secretary of State, has placed restrictions on Plaintiff's speech. In a nutshell, if Plaintiff wishes to use a speaker's platform and sound system as part of its demonstration, Plaintiff will have to place that platform and sound system on the north steps of the State Capitol. As mentioned above, if the restrictions are content neutral, narrowly tailored, and leave open adequate alternative modes of communication, they are constitutional.

"The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Rock Against Racism*, 491 U.S. at 791, 109 S.Ct. at 2754 (citing *Clark v. Community for Creative Non–Violence*, 468 U.S. 288, 295, 104 S.Ct. 3065, 3070, 82 L.Ed.2d 221 (1984)). "The government's purpose is the controlling consideration. A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Id.* (citing *Renton v. Playtime Theaters, Inc.*, 475 U.S. 41, 47–48, 106 S.Ct. 925, 928–29, 89 L.Ed.2d 29 (1986)).

The Secretary's purposes behind the regulations in this case are access of vehicular traffic, especially emergency vehicles, to the Capitol complex, protection of an expensive piece of equipment recently installed in the Capitol complex, and avoiding security problems created by Plaintiff attempting to drown out the KKK's rally. *Rock Against Racism* makes clear that the Secretary's stated purposes are controlling for determining content neutrality.

The regulations at issue are completely unrelated to the content of Plaintiff's speech. Making sure that emergency vehicles have access to the Capitol complex and that the complex grounds are not damaged have no relation whatsoever to the content of Plaintiff's speech. While the government's concerns regarding Plaintiff's drowning out of the KKK rally relate to the volume and direction of Plaintiff's speech, it has nothing to do with the content of that speech. Accordingly, the time, place, and manner restrictions imposed by the Secretary are content neutral.

The restrictions are also narrowly tailored to promote significant governmental interests. As pointed out above, these restrictions need not be the least restrictive means. "Rather, the requirement of narrow tailoring is satisfied 'so long as the ... regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'" *Rock Against Racism*, 491 U.S. at 799, 109 S.Ct. at 2758 (quoting *United States v. Albertini*, 472 U.S. 675, 689, 105 S.Ct. 2897, 2906–07, 86 L.Ed.2d 536 (1985)).

It is unquestionable that the state has a substantial interest in maintaining access to the State Capitol. Furthermore, it is crucial that the government be able to get emergency vehicles into and out of the area quickly. To do this, the circular drive must be kept clear of obstructions, such as speaker's platforms and sound systems.

The government also has a substantial interest in not wasting the taxpayer's money. Within the past two years, a sophisticated sprinkler system was installed to water the lawn of the Capitol complex. Placing a speaker's platform and sound system on the lawn of the Capital complex could damage the sprinkler system. The Secretary of State's office estimates the cost of repairing the system at $35,000. It is well within the Secretary's authority to determine that Plaintiff's desire for a particular location for its speaker's platform and sound system must yield to the desire to avoid having the people of the State of Illinois having to pay several thousand dollars to repair the sprinkler system.

The state also has a substantial interest in maintaining security at a rally being held on the grounds of the State Capitol. In fact, failure to do so could result in the state being held liable for injuries resulting from a lack of security.

Given these valid concerns of the government, the only alternative open to the Secretary is to prevent Plaintiff from erecting the speaker's platform and sound system on the circular drive or on the lawn of the Capitol complex and refusing to allow Plaintiff to aim its sound system directly at the KKK rally. The government's interests would be achieved less effectively absent these restrictions. Accordingly, these restrictions are narrowly tailored to achieve significant government interests.

Finally, the regulations in this case leave open adequate alternative modes of communication. Plaintiff is not being denied the right to use a speaker's platform and sound system. Rather, the government is simply limiting the location in which the platform and sound system must be placed. Plaintiff will be able to reach its intended audience, people opposing the Ku Klux Klan, with the platform and sound system placed on the north steps of the Capitol.

This Court concludes that all of the precautionary conditions imposed by Secretary Ryan were clearly reasonable under the totality of all the accompanying circumstances.

*Ergo*, Plaintiff has very little likelihood of success on the merits of its case. Furthermore, the irreparable harm Defendants might suffer outweighs the irreparable harm Plaintiff might suffer.

Accordingly, Plaintiff's emergency motion for preliminary injunction is DENIED. *See Roland Machinery Co. v. Dresser Industries,* 749 F.2d 380 (7th Cir.1984) (the lesser plaintiff's likelihood of success, the more the harms must way in plaintiff's favor).